Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 7267 | DATE | 3/7/2001 |
| CASE TITLE | Atwell vs. Lisle Park District | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendant's motion (Doc 6-1) to dismiss is granted in its entirety. Counts I and II are dismissed with prejudice. The pendent state law claim set forth in Count III is dismissed without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 0 8 2001 | |
| | Notified counsel by telephone. | date docketed | 14 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SCT | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SARAH E. ATWELL,  )
  )
        Plaintiff,  )
  )
vs.  )  00 C 7267
  )
LISLE PARK DISTRICT,  )
  )
        Defendant.  )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on Defendant Lisle Park District's motion to dismiss the complaint. For the reasons set forth below, the motion is granted.

## BACKGROUND

For the purposes of Defendant's motion to dismiss, we must accept as true the following well-pleaded allegations of the complaint: In January 1999, Plaintiff Sarah E. Atwell was hired by Defendant Lisle Park District (the "Park District") as its Director of Development. On April 27, 2000, the Park District initiated an internal investigation of allegations that Atwell had misused Park District funds and concealed her conduct from the Board of Park Commissioners (the "Board"). On April 27, 2000, the Board suspended Atwell with pay pending the results of the investigation.

The Board's attorney, Charlene Holtz, apprised Atwell of her suspension by telephone on May 1, 2000. Holtz followed up with a May 10 letter which advised Atwell that the investigator would be contacting her and that it was "the direction of the Park Board that you cooperate fully and truthfully with the internal investigation." On May 7, Holtz met with Atwell in person to collect Park District property in Atwell's possession. At this meeting Holtz again instructed Atwell to cooperate fully with the investigator. She also informed Atwell that the DuPage County State's Attorney's Office had convened a grand jury to investigate the allegations against her.

On May 8, the Board's investigator, attorney Kevin Simon, left a message at Atwell's home indicating his desire to interview her in connection with the investigation. He spoke with Atwell the following day, and Atwell told him that she would have her attorney contact him regarding the interview. Atwell met with her attorney, Robert Schillerstrom, that afternoon. Schillerstrom advised Atwell to exercise her right, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, to remain silent with respect to the investigation. He did not immediately contact Simon, however.

On May 10, Simon sent a letter to Atwell requesting that her attorney contact him immediately about scheduling the interview. Schillerstrom did not do so until May 12. At that time, he informed Simon that Atwell would exercise her purported

constitutional right to remain silent and would not cooperate with the investigation unless Simon first provided Atwell with a list of interview questions or areas of inquiry. By letter of May 15, 2000, Simon informed Schillerstrom that after consideration of the matter, he declined to provided the requested information. He insisted that Schillerstrom inform him by 2:00 p.m. the following day whether Atwell would comply with the Board's explicit direction to participate in an interview with him. Schillerstrom apparently never responded.

On May 25, 2000, Holtz informed Atwell by letter that the Board had terminated her employment. Holtz offered two reasons for the Board's decision: Atwell's "failure and refusal to cooperate fully and truthfully with the Park District's internal investigation" and her "knowing or negligent" receipt of salary payments in excess of the budgeted amount. Holtz informed Atwell that she could request a review of her termination by submitting a written request to the President of the Board within five days.

On June 1, Schillerstrom submitted a four-page appeal to the Board on Atwell's behalf. He responded specifically to each of the Board's stated reasons for Atwell's termination. With respect to the failure to cooperate charge, Schillerstrom wrote:

> The Grand Jury investigation was targeted at our client and triggers her Fifth Amendment privilege pursuant to the United States Constitution. Ms. Atwell did not willfully fail to respond with a Park District Directive,

but rather followed the advice of her counsel and declined to be interviewed by the Park Board's investigator due to the on-going Grand Jury investigation. Therefore, the Park Board's decision to terminate her employment based upon her act of following the advice of her counsel in not speaking with the investigator, who would be subject to subpoena by the DuPage County State's Attorney's Office pursuant to their Grand Jury powers, cannot be the basis of the Board's termination.

Schillerstrom also asserted that Atwell was unaware that her salary exceeded the budgetary amount and pointed to other employees who had received greater-than-budget payments without being terminated.

The Board responded by affirming its decision to terminate Atwell. In a June 16, 2000, letter from Holtz's partner James Wascher, the Park District informed Atwell for the first time that any "compelled" information she had provided the investigator could not have been used against her in a subsequent criminal prosecution. The letter cited D'Acquisto v. Washington, 640 F. Supp. 594 (N.D. Ill. 1986) for that proposition and advised that "[t]he statement in your June 1 letter that Ms. Atwell was justified in refusing to speak with the Park District's investigator, Kevin Simon, because he 'would be subject to subpoena by the DuPage County State's Attorney's office pursuant to their Grand Jury powers' is without merit."

The independent investigation found no wrongdoing or impropriety by Atwell. Nevertheless, at some point the Park District publicly released information implying that Atwell was involved with financial improprieties committed at the Park District

-4-

and that she was an active participant in obtaining a salary that was greater than that budgeted by the Board. Atwell alleges that at the time the Park District released the information to the public, it knew or should have known the information was incorrect. She also claims the publication of the information prohibited her from obtaining a job substantially similar to that which she performed for the Park District.

On November 17, 2000, Atwell filed suit against the Park District. The three-count complaint alleges that the Park District terminated Atwell in violation of the Fifth Amendment guarantee against self incrimination; that it deprived her of the liberty to pursue her chosen occupation without due process of law; and that it discharged her in retaliation for her exercise of her right to remain silent in violation of Illinois law. The Park District has moved to dismiss the complaint in its entirety.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Defendants must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir.

1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hartford Fire Insurance Co. v. California, 509 U.S. 764 (1993); Sherwin Manor Nursing Center, Inc. v. McAuliffe, 37 F.3d 1216, 1219 (7th Cir. 1994). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings themselves. Documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. Fed. R. Civ. P. 10(c). In addition, "[d]ocuments that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993). It is with these principles in mind that we turn to the motion before us.

## DISCUSSION

### I. Privilege against self-incrimination

It is well-settled that a public employee may be required, on penalty of discharge, to answer even potentially incriminating questions that are specifically, directly, and narrowly related to the performance of her official duties. Gardner v. Broderick, 392 U.S. 273, 88 S. Ct. 1913 (1968); Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation, 392 U.S. 280, 88 S. Ct. 1917 (1968); Confederation of Police v. Conlisk, 489 F.2d 891, 894 (7th Cir. 1973), cert. denied 94 S. Ct. 1971 (1974). Any information provided under such circumstances is, however, considered to be "compelled" and may not be used in subsequent criminal proceedings against the employee. Garrity v. New Jersey, 385 U.S. 493, 87 S. Ct. 616 (1967). Although the Garrity immunity is self-executing, the Seventh Circuit has held that a public employee must be advised that her statements cannot be used against her before the employer may take disciplinary action in response to her refusal to divulge information. United States v. Devitt, 499 F.2d 135 (1974); Conlisk, 489 F.2d at 894; see also Gardner, 392 U.S. at 279 ("Petitioner could not have assumed – and certainly he was not required to assume – that he was being asked to do an idle act of no legal effect.")

There is no doubt in this case that the Park District did not advise Atwell of her Garrity immunity prior to firing her. The Park District argues, however, that the duty

to advise does not arise until a specific question is posed, and objected to, by the employee. In support of its position, the Park District cites the Fifth Circuit case of Gulden v. McCorkle, 680 F.2d 1070 (1982). In Gulden, two police officers were terminated for refusing to take polygraph tests. They sued, alleging that their termination violated their constitutional right to remain silent, since they were never informed that their answers to the polygraph examiner's questions could not be used against them in subsequent criminal proceedings. The Fifth Circuit rejected the officers' argument, holding that any duty to advise a public employee of his or her Garrity immunity does not arise until the employee actually appears at a scheduled examination or other proceeding and is faced with questions that directly implicate his Fifth Amendment rights. Because the officers failed to appear for their polygraph examination, the court explained, there was no "particularized, specific inquiry in which questions of immunity could be properly framed." Id. at 1075-76. The court further "decline[d] to promulgate the rule...that would allow an employee, before he or she is required to respond to any questions, to circumvent an investigatory proceeding by claiming generalized fifth amendment concerns prior to the time those concerns have been developed in a particularized context." Id. at 1076.

Although the Seventh Circuit has never adopted Gulden in a published opinion, the Fourth and Eighth Circuits have followed the Fifth Circuit's holding. See Wiley

v. Mayor and City Council of Baltimore, 48 F.3d 773, 777 (4th Cir. 1995) ("the need for an explanation did not ripen because no officer attempted to invoke his Fifth Amendment rights *during the polygraph tests*") (emphasis added); Hill v. Johnson, 160 F.3d 469, 472 (8th Cir. 1998) (no duty to advise where employee failed to show up for polygraph examination). We, too, agree that the rule set forth in Gulden strikes the appropriate balance between a public employee's privilege against self-incrimination and a public employer's right to question the employee about the performance of her official duties. And we agree with the Park District that in this case, as in Gulden, no affirmative grant of immunity was required. Atwell's assertion of her Fifth Amendment privilege was premature; the privilege must be raised with specificity in response to particular questions. See, e.g., People v. Urbano, 1986 WL 7680, at *1 (N.D. Ill. June 30, 1986) (citing cases); In re Bon Voyage Travel Agency, Inc., 449 F. Supp. 250, 253 (N.D. Ill. 1978) (citing cases). By refusing outright to submit to an interview regarding the charges against her, Atwell cut off any opportunity for the Park District to propound the type of specific questions which might induce a proper invocation of the Fifth Amendment and, in this context, trigger the need for an explanation of the limited use to which her answers could lawfully be put. Under the circumstances, the Park District's refusal to advise Atwell of the potential availability of Garrity immunity was not improper, and thus Atwell's discharge was not unlawful.

Accordingly, the motion to dismiss Count I is granted.

## II. Procedural due process

The Park District next moves to dismiss Count II, in which Atwell alleges that the Park District deprived her of her liberty interest in pursuing her profession without due process of law. "When the government removes someone from a position 'for stated reasons likely to make him all but unemployable in the future, by marking him as one who lost his job because of dishonesty or other job-related moral turpitude,' the consequences are akin to depriving him of the ability to follow his chosen trade, and due process must be provided." Pleva v. Norquist, 195 F.3d 905 (7th Cir. 1999) (quoting Lawson v. Sheriff of Tippecanoe County, Ind., 725 F.2d 1136, 1139 (7th Cir.1984)). The Park District acknowledges that, according to the complaint, it made false statements which deprived Atwell of her ability to pursue her chosen occupation. It contends, however, that its internal investigation and appeal procedure offered Atwell notice and an adequate opportunity to be heard in defense of her actions. We agree.

Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." Cooper v. Salazar, 196 F.3d 809, 814 (7th Cir. 1999) (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893 (1976)). This is a flexible concept where the requirements "vary with the type of proceeding involved." Id. (quoting Hannah v. Larche, 363 U.S. 420, 440, 80 S.Ct. 1502 (1960)). In assessing whether particular procedures were sufficient in a given situation, we balance three

factors: 1) "the private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and 3) "the Government's interest." Id. (quoting Mathews, 424 U.S. at 335). In Cleveland Board of Education v. Loudermill, 105 S. Ct. 1487 (1985), the Supreme Court found that the importance of a public employee's interest in her job, combined with the government's strong interest in expeditious removing unsatisfactory or untrustworthy employees from its ranks, created a due process requirement of some sort of pre-termination hearing. The analysis is the same for a public employee's liberty interest in pursuing her profession. See, e.g., D'Acquisto, 640 F. Supp. at 613 (citing cases).

The internal investigation initiated by the Park District provided Atwell with an opportunity to present her version of the facts and to address the allegations against her prior to her termination. That Atwell chose not to take advantage of this opportunity, albeit due to a misinterpretation of the legal consequences of her participation, does not alter the fact that the Park District satisfied its duty to afford her due process. As this Court observed in D'Acquisto v. Washington, 640 F. Supp. 594, 623 (N.D. Ill. 1986), "putting the individual to the choice between his opportunity to be heard and his privilege against self-incrimination is not an impermissible burden on his Fifth Amendment rights." Accordingly, the motion to dismiss Count II is granted.

## III. Retaliatory Discharge

Defendants finally move to dismiss Count III, a pendent state law claim for retaliatory discharge. "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 727 (7th Cir. 1998); 28 U.S.C. § 1367(c)(3); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130 (1966). Finding no unusual circumstances that would justify the continued exercise of supplemental jurisdiction, we dismiss the remaining state law claim for retaliatory discharge, without prejudice.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted in its entirety. Counts I and II are dismissed with prejudice. The pendent state law claim set forth in Count III is dismissed without prejudice.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: March 7, 2001